Good morning, Your Honours. This is the Court. William Keong for the Petitioner. Forgetting to follow the immigration judge's order or instruction to submit an updated fingerprint before an asylum merits hearing is not good. However, I think the immigration judge abused his discretion in pre-permitting the petitioner's application for withholding of removal. The fact that in the year 2003 when this occurred, not submitting an updated fingerprint before the merits hearing was very routine practice in the Los Angeles Immigration Court. It was not a violation of any law, it was not a violation of any regulation, or even the local Los Angeles Immigration Court's own rules. When the immigration judge finished the asylum hearing, only for those approvable cases would the Department of Homeland Security... Let me ask you this because I'm interested in this subject. Your client is a 38-year-old native and citizen of China, and she claims she suffered a coerced abortion. That's right. And I.J. Fong refused to hear the merits of her claim because she hadn't submitted updated fingerprints. Is that right? That's correct, Your Honour. And she'd been fingerprinted before, but the record was not clear on when exactly this happened. At one point her counsel said the fingerprints were submitted before 2001, but the security checks expire 15 months from the date of issuance. So she would have had to submit new fingerprints. Is that right? That's right, Your Honour. Okay, and I.J. Fong never warned Hugh that her claims could be pretermitted if she didn't submit new fingerprints before the merits hearing. Right? Right, Your Honour. And he never asked her, let's see, I.J. never asked her if she understood the fingerprint requirements. Is that right? That's right, Your Honour. And you're telling us that it was an unusual practice in the L.A. immigration courts to perform background checks only on the fingerprints of applicants who had already proven the merits of their claim. That was the way it was in the year 2003. Okay, and then at the trial and appellate level, you were her lawyer. That's what's correct, Your Honour. Okay, and most of the continuances granted in her case were because the government was unprepared to proceed. Not unprepared because the government lodged additional separate charges twice, making the charges three times. So those continuances were to prepare and to plead to the charges. And there was one continuance for the respondent to produce a witness and one continuance for the government to produce a countervailing witness. So the petitioner never on her own asked for the continuance. Yeah, well, the first request for a continuance was January 23, 2001. And the government at that time said it was unprepared to proceed on the merits and requested time to consider certain terminating allegations. And this was at the master calendar hearing. That's right. That was normal because we submitted the evidence, documentary evidence, and the government needed time to review them. Okay, so that was a one-and-a-half-month delay. And then March 8, 2001, your client needed time to review the amended allegations of the government that were provided just the day before going on the record that day. That's right, Your Honour. All right, and then you got a continuance of less than one month. And then both you and the government needed more time to review the materials. That was the request of April the 3rd, and it was a two-month continuance. And then you had a busy calendar, and so Judge Fong continued the matter for 14 months, for May the 14th, 2001. Your Honour, may I interrupt? It was not the attorney's busy schedule. It was because the witness was not available on the scheduled hearing date, and the attorney appeared in a special appearance just to ask for a motion to continue to accommodate the witness. So on August the 6th... Well, I have here that you had a busy calendar. Then on August the 6th, 2002, the IJ requested additional witnesses be subpoenaed, so there was two weeks gone there. And then we had witnesses unavailable for testimony on August the 13th, so that was continued a month. Right. Okay. Then the government was unprepared to proceed on the merits. You were ready. That was September the 18th. The matter was continued five months. You came back five months later, and the priority take case took precedence, so that continued for another four and a half months. And you requested a short continuance to submit fingerprints, and that was denied. That's right, Your Honour. Thank you. All right. Were you not advised by the IJ to have the fingerprinting done before the merits hearing? We were, Your Honour. But what I'm saying is this, it's an abuse of discretion for the judge not to continue, not to grant a motion to continue for a short time to update the fingerprint. You had no excuse for not... No excuse, just plainly forgot. But however, that... Did your client speak and understand English at that time? A little bit. She went to language school at that time. So she understood that she was to have fingerprints before the next hearing. I don't deny that, Your Honour. She understood. She plainly forgot to do it because the case dragged on for two and a half years. And especially at that time, I was not, as attorney, I was not that concerned either because normally the government trial attorney would not even perform a fingerprint check unless the case has been heard and is found to be unprovable. And besides, the petitioner was only asking for withholding of removal, which did not even require a fingerprint check at that time. But the regulation changed in the year 2005 by the Department of Justice. The A.J. made this decision based on the fact that he had specifically told you that he needed fingerprints and that there was no reasonable excuse for not having them. You just forgot. That's correct, Your Honour. Yeah, but, you know, with all due respect, you've had a lot of problems in that area, haven't you? At that time, in the year 2003, but no more now. After 2005, January, the regulation was promulgated and very clear. It became mandatory and it's all uniform throughout the United States immigration courts. What became mandatory? A fingerprint check must be completed before asylum hearings just to uniform, to make all the immigration courts do the same thing. This was required after your hearing, though. That's right. Two years later. Two years afterwards. That's right. That requirement was kind of firmed up. That's right. So it just showed to the court that before that, before 2005, it was normal practice, even in Los Angeles immigration court. Even if the petitioner has submitted a fingerprint check, the government would not even bother to clear it before the hearing. They normally ask for a short continence on their own after the case has been found approvable. Well, that would make sense. Why go to all that effort if the immigrant wasn't going to be admitted anyway? I mean, I've had fingerprint checks done. It takes time. It costs money. If I do it, most are going to be granted. That's right. That was the logic. And it was unclear back then. But now, since April 2005, it's clear. That's right. Every case, you're going to submit fingerprints before. It became mandatory. Yeah, but what I'm saying, without going into any details, you've had a number of problems in the past with our court for not following rules. Is that right? That's right. Quite a few. I've got a list of them, you know. But you've been following a straight and narrow path for how long now? You mean the requirement for the fingerprint updates? No, no, no. Just following our court rules, getting papers filed on time. On this particular case? No. In general, he means. No. I'm sorry. I didn't quite get you, Your Honor. You don't understand what I'm saying. No. Are you talking about my particular cases or in general? The other cases in general. Oh. That you've had some issues with our court in general, with other cases as well as this one with missing a deadline. Yeah, that happened before. And Judge Ferguson was asking you, have you started complying with those kinds of rules now? The immigration courts are much more stricter than before, and the applicants respond and the petitioners, attorneys are doing a lot better than before because of the strict requirements and because of streamlining of appeals. If you miss a deadline, they will say no excuses. Well, let's go on to something else. Okay. Why don't we hear from the government, huh? All right, Your Honor. Thank you. Good morning. My name is Nancy Friedman, further respondent. May I just take a second, Judge Gregerson, to thank you for being part of the greatest generation. And as the child of Nazi refugees, I appreciate it. We are here this morning. Okay, let's help this refugee out. Well, one must also help oneself and meet one's obligations in the most basic respect. We got Judge Fong here, huh? Yes, Judge. What do you know about him? I don't have any details about Judge Fong's immigration practice. Okay. He's a number two guy, isn't he? I'm not sure, Your Honor. Yeah. There's a pretty good record on him. You might want to look it up, you know, for being arbitrary and all that. Okay? There's a website you can look at. Is it Syracuse University website? Do you know what it is? No. You know, and... No. And... You know, we have a lawyer here who doesn't follow through and let the client know. You've got to go get your fingerprints. Your Honor, I don't know what else the judge could have done in this case. He could have looked at her and told her and given her a piece of paper and told her what to do and where to go. And that's required now, isn't it? Your Honor, the... Is it required now? Yes, Your Honor. Okay. After 2005, the regulations changed. Changed because of all these injustices. No, I disagree, Your Honor. The petitioner was warned time and time again, starting with her application for asylum, which is part of the record. Well, how about her lawyer not making sure that she did it? He didn't say he didn't know he had to do it. He just forgot. Forgot, yeah. Well... And she had two years. But who allows him to practice in the immigration court? Excuse me, Your Honor? Who allows someone who keeps forgetting to keep practicing in the immigration court? The Justice Department, right? I don't believe there was any allegation... The Justice Department knows what's going on. Well, I'm not sure that they could do anything about someone who admits he forgot to do something. No, no, no. Even the practice that was being followed at the time, you know, the immigration office itself said that the standards were unclear. I mean, the practice was waiting until afterwards. Your Honor, I strongly disagree with that as a fundamental principle in this case and in every case. In every form of relief that a petitioner is seeking, they have the burden of establishing their identity, who they are, whether they have a criminal record. Excuse me, Your Honor? She didn't necessarily have to do it by fingerprints. She absolutely did have to do it by fingerprints. Didn't the 589 form say only if you were seeking asylum and she was seeking withholding? Absolutely not, Your Honor. The application, the instructions on the application for asylum states in black and white, it's part of the record at page 45, that this application is for asylum and for withholding, instructions for form I-589, asylum and for withholding of removal. At the bottom, it says, failure to complete these actions and to follow any additional instructions the immigration judge has given you could result in a delay in deciding your application or in your application being deemed abandoned and dismissed by the court. She filled out that application in, what was it, before 2001. She was, no, I'm sorry, October 2nd, 2000. She filled that application out and she signed it. The statute itself requires fingerprints. Petitioner is absolutely wrong in saying that that wasn't required. One need only look at the asylum statute. And this has been, in effect, forever for asylum and for any kind of relief the petitioner is seeking. But in this case, at 208. Why would they change the regulations? Well, of course. Why? Because they strengthened all the requirements on the petitioners to submit biometrics to establish their identities and that was absolutely critical. Well, why would they change those rules so that the IJ had to notify these folks, not the lawyers, the applicant? Why? Why was that done? It was just an additional warning on top of all the ones they've been giving. There were a lot of problems about this. In some areas you could submit it after. In some areas they want it before. But this petitioner was asked for two years to do it. I don't know, Your Honor, because that's not part of this record here, what the local practices. Don't you know what the rules are? Yes, I do. And there's no rule? That the Justice Department had in some IJs in some areas? Well, submit it after because why should we go through all the work of checking you out until we know you're eligible? But the immigration judge asked for prints for two years. We've got to cut back on all that backlog with the FBI. Some did it that way. Some did it another way. And so now you've got a statute that makes it clear. It made it clear before, Your Honor. You've got to tell the client, the applicant, what the applicant needs to do and what the timelines are. They were told, Your Honor, they were told for two years, and they forgot to do it. The immigration judge couldn't, well, take the petitioner and walk her over to the local agency office to be printed. She had counsel to do that for her. A short continuance to go get them. She had two years of continuances to do it. If you go through the factors, the legal factors on a continuance, what was the inconvenience to him to give her a short continuance to go do it? But, Your Honor, that could have gone on forever here, and that's not how the immigration court operates. Excuse me? I don't know how the immigration court operates. To me, every immigration judge does things differently, and I've seen thousands and thousands and thousands of these cases, and none of them where I don't think you can say that the IJs all do this, that, or the other thing. I think it's being cleaned up now. I think in large measure because of work that our circuit's done with people back in Washington, that a lot of this is getting cleaned up and some systems and rationality is being inserted into the system. But I don't understand why, well, what would be the inconvenience to the IJ to give a short continuance? The standard of review, Your Honor, is not what inconvenience it would have been to the immigration judge. It's whether they abused their discretion. There's three prongs. Yeah, there's three prongs for deciding whether or not the judge abused his discretion. The first prong is what's the inconvenience to the immigration judge. The inconvenience was that he had held two years of hearings already, and the petitioner just forgot. I can imagine if they said it was. Why was that an inconvenience to the IJ? Because he had set a hearing and set court time aside for this hearing, and the petitioner didn't comply with the most basic requirement to establish her identity here. It is her burden to do so. Congress has made it clear they want to know who is coming in the country. Isn't it part of our burden as judges to be kind to people, to be considerate, to be helpful? Absolutely, Your Honor, and the immigration judge did that for two years. This particular gentleman here, we have one instance where the lawyer, who is a rascal, came in and said, oh, the judge set something for a hearing on 3rd of July, and the lawyer came in or wrote in and said, oh, it's not convenient for me because I've got to get ready for a 4th of July party at my home the next day. Okay, two years' continuance. Two years' continuance on that. I mean, that's how the calendars run sometimes. Well, Your Honor, I'm almost out of time, so may I? We've got lots of time. All right, then. I'll direct the Court's attention to page 242 of the record. That was on September 18, 2002, when the immigration judge reset the matter from September 18, 2002, to February 5, 2003, stating, at that time we'll be considering your applications for withholding of removal and convention against torture. At that time, you must be present with your attorney, ready to proceed. Please make sure you're present because I must warn you, if you are not, as you know, I will consider your claims and applications abandoned and enter an order of removal. They had been warned and told to get the fingerprints done. They had said that they would, and they didn't do it. They said you have to be here. And they also were told to get their fingerprints done and had said okay. Well, I didn't hear anything about fingerprints over there. Excuse me, Your Honor, just referring to the statute at 208. The asylum statute, the starting point. It says asylum procedure. The attorney general may require fingerprints. You were telling me a minute ago that you were going to meet me, what the judge said, and I anticipated he was going to tell this person she had to have her fingerprints done, but I didn't hear that. Now you're saying she should have thought about this. Somehow this statute should have come into mind. That's why she had an attorney, Your Honor. She had counsel. It wasn't his first asylum case, I imagine. He probably had read the asylum application. He knew he had to get fingerprints done. I don't know that he read it. He forgot. How do you know he read the asylum application? Well, I would think anyone filling out an asylum application would read the page that says instructions for filling out applications. Who filled it out on the application? She had counsel at the time. I don't recall who assisted her with it. Tell me who filled it out. I would have to get the other part of the record with the asylum application. Lucy, I find nowhere in the record, even on the page that you're saying, that she acknowledges that she had to get her fingerprints. And the odd thing about this case is that she already had her fingerprints done once. But, Your Honor, old fingerprints are not any good. They might as well not be. She could have been convicted of a crime. We don't know. But you just run another make with the old fingerprints. They do that all the time. But that's not what the regulations require, Your Honor. All she had to do was go and get an update. She had two years to do it. Who told her to do it? The immigration judge did. The statute did. The regulations did. The instructions on her asylum application did. She was told over and over. Did she know that she could read English? She had an attorney whose job it was to do that. I'm looking at her. I'm trying to answer Judge Wardlaw's question. I just read the pages you referred me to, and I don't support what you say. That's all I'm commenting on. But, Your Honor, going back to the fact that the regulations changed in 2005, the immigration judge wasn't specifically required to warn her, get your fingerprints done? Judge Wardlaw said she read those pages that you referred to, and they don't say what she said. Well, it says what I read into the record, and along with the statute, the regulations, and the instructions on her asylum application say get your fingerprints done. She forgot to do it. It was not in abuse of the judge's discretion to deny yet another continuance. Well, we'll decide that. Thank you, Your Honor. Thank you. You want to say anything? Why weren't you on top of this? Why didn't you get her to get the fingerprints in? You say you forgot. Yes, we both forgot, Your Honor. What did you say? We both forgot. Well, but it's your job to guide your client, right? Right. You got paid for it, didn't you? Right, Your Honor. So you let her down, huh? At that time, my thought was the judge could hear the hearing, the asylum hearing. Besides, she was only applying for withholding or removal, which did not require a fingerprint background check. This honorable court routinely remanded cases back to the Board of Immigration and Appeals. They did this called grants withholding, but remanded asylum only for fingerprint background check. So you can see withholding or removal did not require fingerprint background check. In this case, the respondent did one background check already, and there was no evidence that she ever committed any crime. So I think still it's our fault. However, the judge abused his discretion, not granting a continuous, a short one, just to get the fingerprint. All right. Okay, thanks. Matter is submitted. Thank you very much, Your Honor. Thank you.
judges: Pregerson, Wardlaw, Archer